**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2489-20

DAVID JOHNSON, an infant
by his guardian ad litem,
SHALONDA JOHNSON, and
SHALONDA JOHNSON,
individually,

      Plaintiffs-Appellants,

v.

SKY ZONE INDOOR
TRAMPOLINE PARK IN
SPRINGFIELD, SKY
ZONE, LLC, SKY ZONE
FRANCHISE GROUP, LLC,
and GO AHEAD AND JUMP
4, LLC,

      Defendants-Respondents.

_____

Argued November 10, 2021 – Decided December 6, 2021

Before Judges Fuentes, Gilson, and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5446-20.

Edward M. Colligan argued the cause for appellants (Colligan & Colligan attorneys; Edward M. Colligan, on the brief).

Kelly A. Waters argued the cause for respondents (Wood Smith Henning & Berman, attorneys; Kelly A. Waters, of counsel and on the brief; Jill A. Mucerino and Sean P. Shoolbraid, on the brief).

PER CURIAM

David Johnson, a child under the age of eighteen, was injured while visiting a trampoline park owned and operated by Sky Zone, LLC, Sky Zone Franchise Group, LLC and Go Ahead and Jump 4, LLC (collectively, Park or defendants). Shalonda Johnson, individually and as guardian ad litem of her minor son (collectively, plaintiffs),[1] filed a civil action against defendants in the Superior Court, Law Division, in Union County, seeking compensatory damages. In lieu of filing a responsive pleading, defendants moved before the Law Division to enforce an arbitration clause contained in an electronic document Johnson signed as a condition of being permitted to enter the Park. After considering the arguments of counsel and the exhibits submitted, the Law Division judge assigned to the case granted defendants' motion to enforce the

---

[1] In the interest of clarity, we will occasionally also refer to plaintiffs by their names; we will refer to the child by his first name and his mother by her last name. No disrespect is intended.

arbitration clause and dismissed the case with prejudice in an order entered on March 24, 2021.

In this appeal, plaintiffs argue the arbitration clause contained in this electronic general liability release contract is unenforceable. After reviewing the record presented to the Law Division judge, we affirm the part of the order enforcing the arbitration clause, vacate the dismissal of plaintiffs' complaint with prejudice, and remand for the court to stay judicial proceedings related to this case pending the outcome of the arbitration.[2]

I.

A.

On July 14, 2018, ten-year-old David and his mother visited the Park. Before they were permitted entry, however, a Park employee apprised Johnson she was required to sign a "Participation Agreement, Release and Assumption of Risk" (the Agreement) on an electronic tablet. On August 15, 2018, plaintiffs again visited the Park and, while jumping on a trampoline, David seriously

---

[2] Although an order entered by the Law Division compelling or denying arbitration is appealable to this court as of right, pursuant to Rule 2:2-3(a)(3), the trial court must stay any judicial proceeding pending the outcome of the arbitration. The court may also limit the stay to arbitrable claims if other claims are severable. GMAC v. Pittella, 205 N.J. 572, 584 n.7 (2011) (citing N.J.S.A. 2A:23B-7(g)).

injured his leg.[3]   The appellate record did not include evidence of whether Johnson executed a second waiver.

The Agreement contains a general release provision "intended to release and provide other benefits, legal protections and consideration" to defendants. For example, it contains an "acknowledgement of potential injuries" provision, which places patrons on notice that "participating in trampoline and other activities is inherently and obviously dangerous."  The Agreement also includes a "voluntary assumption of risk acknowledgment" provision, which informs patrons that they "are participating voluntarily at [their] own risk" and could suffer "significant bodily injuries" or "die or become paralyzed, partially or fully, through their use of the Sky Zone facility and participation in Sky Zone activities."

Finally, the Agreement contains a "release of liability" section, which requires patrons to "forever, irrevocably and unconditionally release, waive, relinquish, discharge from liability and covenant not to sue [Sky Zone]" for

> any and all claims . . . of whatever kind or nature, in
> law, equity or otherwise, . . . related to or arising,
> directly or indirectly, from [their] access to and/or use
> of the Sky Zone [f]acility, . . . including, without

---

[3]  In a certification submitted to the motion judge, Johnson averred the injury damaged "the growth plate in my son's leg . . . and his leg did not continue to grow properly.  He has undergone surgery to shorten the opposite leg and may need additional treatment in the future."

A-2489-20

limitation, any claim for negligence, failure to warn or other omission, . . . personal injury, . . . [or] bodily harm . . . .

The enforceability of these exculpatory provisions are not part of this appeal. We express no opinion as to whether these exculpatory provisions are enforceable under our State's common law, as expressed by our Supreme Court in Stelluti v. Casapenn Enters., LLC, 203 N.J. 286 (2010), and Hojnowski v. Vans Skate Park, 187 N.J. 323 (2006).

The dispositive issue in this appeal concerns the enforceability of the section in the Agreement entitled, in part, "arbitration of disputes." The Agreement is presented to the patrons at a kiosk in the form of an electronic document. The patrons are expected to read it and acknowledge their consent to be bound by the terms contained therein by placing an electronic "checkmark" and entering certain personally identifying information. Defendants argue David's mother placed an electronic checkmark where indicated, and thus acknowledged she understood and agreed "to arbitrate any dispute as set forth in this section" and waived "[her] right, and the right(s) of [her] minor child(ren) . . . to maintain a lawsuit against [defendants] . . . for any and all claims covered by this Agreement."

A-2489-20

This section also provides the following recitation of the rights plaintiffs agreed to waive as a precondition to enter the Park and participate in the activities available therein:

> By agreeing to arbitrate, I understand that I will **NOT** have the right to have my claim determined by a jury, and the minor child(ren) above will NOT have the right to have claim(s) determined by a jury. Reciprocally, [the Sky Zone defendants] waive their right to maintain a lawsuit against [plaintiff] . . . for any and all claims covered by this [a]greement, and they will not have the right to have their claim(s) determined by a jury. **ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO MY OR THE CHILD'S ACCESS TO AND/OR USE OF THE SKY ZONE PREMISES AND/OR ITS EQUIPMENT, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE BROUGHT WITHIN ONE YEAR OF ITS ACCRUAL (i.e., the date of the alleged injury) FOR AN ADULT AND WITHIN THE APPLICABLE STATUTE OF LIMITATIONS FOR A MINOR AND BE DETERMINED BY ARBITRATION IN THE COUNTY OF THE SKY ZONE FACILITY . . . BEFORE ONE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY [JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS)] PURSUANT TO ITS RULE 16.1 EXPEDITED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF**

6

**APPROPRIATE JURISDICTION.** This [a]greement shall be governed by, construed and interpreted in accordance with the laws of the State of New Jersey, without regard to choice of law principles. Notwithstanding the provision with respect to the applicable substantive law, any arbitration conducted pursuant to the terms of this [a]greement shall be governed by the Federal Arbitration Act (9 U.S.C., Sec. 1-16). I understand and acknowledge that the JAMS Arbitration Rules to which I agree are available online for my review at jamsadr.com, and include JAMS Comprehensive Arbitration Rules & Procedures; Rule 16.1 Expedited Procedures; and, Policy On Consumer Minimum Standards Of Procedural Fairness.

[(Emphasis in original).]

The Agreement also contained a merger and a severability clause, in which Johnson acknowledged: "I have had sufficient opportunity to read this entire document. I have read and understood and voluntarily agree to be bound by its terms." The clause further provided:

This [a]greement constitutes and contains the entire agreement between [Sky Zone] and [plaintiffs] relating to the . . . use of the Sky Zone Facility. There are no other agreements, oral, written, or implied, with respect to such matters. . . . If any term or provision of this [agreement] shall be held illegal, unenforceable, or in conflict with any law governing this [agreement] the validity of the remaining portions shall not be affected thereby.

A-2489-20

Plaintiffs filed their personal injury complaint against defendants on August 13, 2020. The Law Division entered default against defendants on December 28, 2020, for failure to file a timely responsive pleading. On January 8, 2021, defendants' counsel notified plaintiffs' counsel he intended to file a motion to dismiss the complaint in lieu of an answer pursuant to Rule 4:6-2(e), based on plaintiffs' failure to state a claim upon which relief may be granted. The attorneys thereafter entered into a Consent Agreement, stating in relevant part:

> This matter having come before the [c]ourt upon the Consent of the parties, whereby the parties consent, stipulate, and agree that the default entered against Defendants, SKY ZONE FRANCHISE GROUP, LLC and GO AHEAD AND JUMP 4, LLC, be vacated and the time for Defendant to Answer ~~or Otherwise Plead~~ be extended until January 30, 2021 . . . .
>
> [(Strikethrough in original).]

Plaintiff's counsel unilaterally struck "or Otherwise Plead" from the Consent Order. On February 2, 2021, the Law Division accepted the Consent Agreement and vacated the default. Defendants moved to dismiss the complaint and compel arbitration on January 30, 2021. Defendants' motion came for oral argument before the Law Division on March 24, 2021. Plaintiffs' counsel argued the arbitration clause presented to Johnson was unenforceable based on both the

obscure, technical language used in the document, and by presenting it as part of an electronic document in a kiosk located outside the Park's entrance. Plaintiff's counsel also emphasized the circumstances under which Johnson allegedly waived her son's constitutional right to a jury trial: "[M]y client went in July [2018] to be a guest at a birthday party. The . . . defense . . . alleges that she signed this Agreement at that time and at that time, they're saying that she signed an agreement that was good forever."

In response, defense counsel argued Johnson did a great deal more than merely place a checkmark on a section of an electronic document. "We don't just have the electronic signatures. We have her name, her address, her phone number, her date of birth . . . it's not merely that you have [Janay's] certification. You have identifiers that Skyzone would not have gotten without the plaintiff." The reference made by defense counsel to "Janay's certification" relates to Michael Janay, the Managing Member of defendant Go Ahead and Jump 4, LLC., who averred:

> As a matter of business practice, all patrons who enter the Park for the first time are required to electronically sign a Participant Agreement, Release and Assumption of Risk . . . at a kiosk, or online, as a pre-condition to entry. Patrons are not permitted entry into the Park unless a Participation Agreement has been executed on their behalf and there are signs throughout the Park indicating the same.

 A-2489-20

. . . [A]ll patrons who enter the Park are required to provide a valid email address when electronically signing the Participation Agreement.

. . . [O]nce the Participation Agreement is electronically signed, a copy of the executed Participation Agreement is sent to the email address provided by the patron.

. . . .

Based on the information provided, a copy of this Participation Agreement was sent to Shalonda Johnson's email following Shalonda Johnson's execution of the Participation Agreement at the Park on July 14, 2018. As indicated, Shalonda Johnson listed her son David Johnson[,] who is the Minor[-]Plaintiff, and another minor Kevin Johnson. On that basis, Shalonda Johnson, David Johnson, and Kevin Johnson were permitted entry into the Park on July 14, 2018.

After considering the arguments of counsel, the motion judge granted defendants' motion on March 24, 2021. The judge explained the basis of his decision in a Statement of Reasons attached to the order.

## II.

Against this factual backdrop, plaintiffs argue the arbitration agreement is ambiguous and unenforceable as a matter of law. We reject these arguments and affirm the part of the Law Division's Order upholding the enforceability of the arbitration clause. Because the Law Division's decision to enforce this arbitration provision is purely a question of law, our standard of review is de

novo. <u>Flanzman v. Jenny Craig, Inc.</u>, 244 N.J. 119, 131 (2020); <u>see also</u> <u>Kernahan v. Home Warranty Adm'r of Fla., Inc.</u>, 236 N.J. 301, 316 (2019) ("Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive.").

As a matter of public policy, our Supreme Court has upheld arbitration as a "favored means of dispute resolution." <u>Hojnowski</u>, 187 N.J. at 342. The Court has consistently endorsed a "strong preference to enforce arbitration agreements, both at the state and federal level." <u>Hirsch v. Amper Fin. Servs., LLC</u>, 215 N.J. 174, 186 (2013). In determining whether a valid agreement to arbitrate exists, we will apply "state contract-law principles." <u>Hojnowski</u>, 187 N.J. at 342. Guided by these principles, "[a]n arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" <u>Kernahan</u>, 236 N.J. at 317 (quoting <u>Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478 (1989)).

Mutuality of assent is the hallmark of an enforceable contract. Thus, the initial inquiry is whether the parties actually and knowingly agreed to arbitrate their dispute. To reflect mutual assent to arbitrate, the terms of an arbitration provision must be "sufficiently clear to place a consumer on notice that he or

she is waiving a constitutional or statutory right . . . ." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 443 (2014). "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444. If, "at least in some general and sufficiently broad way," the language of the clause conveys arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced. Id. at 447. "The key . . . is clarity." Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 607 (App. Div. 2015).

Here, plaintiffs claim the arbitration clause is ambiguous and therefore unenforceable because it contains "void, inaccurate, misleading and ambiguous language . . . ." and "confusing lower[-]case passages and all upper[-]case bold passages." Plaintiffs argue Hojnowski, 187 N.J. at 327, "prohibits a parent of a minor child from releasing the child's potential tort claims arising out of the use of a commercial recreational facility." According to plaintiffs, JAMS, the named forum in the arbitration provision, is "not permitted to conduct arbitration in New Jersey" and thus the agreement should fail. We disagree.

The language in the arbitration clause states plaintiffs were "agreeing to arbitrate any dispute as set forth in this section" and were "waiving [their] right . . . to maintain a lawsuit." It sets forth, "[b]y agreeing to arbitrate, [plaintiffs] understand that [they] will NOT have the right to have [their] claim[s] determined by a jury." This language clearly and unambiguously puts

12

plaintiffs on notice that they are waiving the right to a jury trial and the right to pursue their claims in a court of law. This part of the Agreement is therefore enforceable. See Flanzman, 244 N.J. at 137-38 (citing Atalese, 219 N.J. at 444-45).

Plaintiffs' reliance on Hojnowski is misplaced. Writing for a unanimous Court, then Justice Zazzali[4] made clear "permitting arbitration of a minor's claims is consistent with New Jersey case law discussing the enforceability of arbitration agreements that affect the rights of children." 187 N.J. at 343. Here, plaintiff's mother signed the Agreement that included an arbitration clause.

The unavailability of JAMS does not render the arbitration clause unenforceable. Although the parties agree JAMS is not available to arbitrate this case, the Agreement contains a severability clause that states: "If any term or provision of this [agreement] shall be held illegal, unenforceable, or in conflict with any law governing this [agreement] the validity of the remaining portions shall not be affected thereby." Severability clauses "are indicative of the parties' intent that the agreement as a whole survives the excision of an

---

[4] In October 2006, Governor Jon Corzine appointed Justice Zazzali to succeed Deborah T. Poritz as Chief Justice. Chief Justice Zazzali served in this capacity until June 17, 2007, when he reached the mandatory retirement age for all members of the New Jersey Judiciary.

unenforceable provision." Arafa v. Health Express Corp., 243 N.J. 147, 169 n.2 (2020). As the Supreme Court explained in Flanzman:

> No New Jersey statutory provision or prior decision has elevated the selection of an "arbitral institution" or the designation of a "general process for selecting an arbitration mechanism or setting" to the status of essential contract terms, without which an arbitration agreement must fail.
>
> To the contrary, the [New Jersey Arbitration Act (NJAA)] makes clear that its default provision for the selection of an arbitrator may operate in the absence of contractual terms prescribing such procedures. See N.J.S.A. 2A:23B-11(a). The NJAA reflects the Legislature's intent that the parties' omission of an arbitrator or arbitral organization, or their failure to set forth the method by which they will choose an arbitrator in the event of a dispute, will not preclude the enforcement of their agreement. Ibid.
>
> [244 N.J. at 139.]

The arbitration clause at issue here must be interpreted in accordance with New Jersey law and the Federal Arbitration Act (FAA). The FAA and the NJAA provide for a court-appointed arbitrator if the designated arbitrator is unavailable. Id. at 141. The arbitration clause enables the parties to seek from a court "provisional remedies in aid of arbitration." The language in the Agreement does not show the parties intended to forego arbitration if JAMS is unavailable. The designation of JAMS was not integral to the enforcement of

the arbitration clause. Thus, the unavailability of JAMS does not invalidate the arbitration clause.

We next address plaintiffs' arguments attacking the enforcement of the arbitration clause based on the doctrines of procedural and substantive unconscionability. In essence, plaintiffs argue requiring Johnson to read and sign an ambiguous contract of adhesion immediately before a birthday party left her with no other choice but to assent. Our Supreme Court has described the factors that constitute the doctrines of procedural and substantive unconscionability:

> The defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case, even when a contract of adhesion is involved. [The] Court has recognized that contracts of adhesion necessarily involve indicia of procedural unconscionability. [The Court has] identified, therefore, four factors as deserving of attention when a court is asked to declare a contract of adhesion unenforceable.
>
>> [I]n determining whether to enforce the terms of a contract of adhesion, [a court] look[s] not only to the take-it-or-leave-it nature or the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the "adhering" party, and [(4)] the public interests affected by the contract.

A-2489-20

> [Delta Funding Corp. v. Harris, 189 N.J. 28, 39-40
> (2006) (internal citations omitted) (quoting Rudbart v.
> N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344,
> 356 (1992)).]

Here, plaintiffs merely recycle their arguments relying on the Agreement's alleged ambiguity without applying or analyzing the factors established by the Court in Delta Funding. We discern no basis, in fact or in law, to conclude this arbitration provision is substantively unconscionable. Finally, plaintiffs' allegations that defendants acted intentionally and recklessly have no basis in fact and are not worthy of further comment by this court. Plaintiffs' remaining argument lack sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

The order of the Law Division upholding the enforceability of defendants' arbitration clause is affirmed. However, we vacate the part of the order that dismisses plaintiffs' complaint with prejudice and remand the matter to the Law Division to stay any judicial proceedings related to this case pending the outcome of the arbitration. GMAC, 205 N.J. at 584 n.7; N.J.S.A. 2A:23B-7(g).

Affirmed in part, reversed in part, and remanded consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2489-20